Mary B. BORCHERDING–DITTLOFF, on behalf of herself and all others similarly situated, Plaintiffs,

v.

TRANSWORLD SYSTEMS, INC., Defendant.

No. 98–C–489–C.

United States District Court, W.D. Wisconsin.

March 2, 1999.

Carla O. Andres, Andres Law office, LLC, Portage, WI, for plaintiffs.

Dennis M. Cook, Law Offices of Scott G. Thomas, Milwaukee, WI, for defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for declaratory and monetary relief brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. This case is before the court on plaintiff Mary B. Borcherding–Dittloff's motion for class certification under Fed.R.Civ.P. 23. The proposed class consists of individuals in Wisconsin who received debt collection letters from defendant Transworld Systems. Plaintiff contends that the notice of debtor's rights included in the letters violated the act. This court has jurisdiction over plaintiff's claim under the act and 28 U.S.C. § 1331. I conclude that plaintiff's proposed class has satisfied the requirements for class certification under Rule 23. Plaintiff's motion for class certification will be granted.

The court may look beyond the pleadings when analyzing a motion for class certification because "determination of class action questions is intimately involved with the merits of the claims." *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 13, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1977). For this reason, and for the sole purpose of deciding this motion, I will consider the parties' declarations in addition to the pleadings. The following facts are taken from these sources.

## FACTS

Plaintiff Mary B. Borcherding–Dittloff is an individual residing in Wisconsin. Defendant Transworld Systems, Inc. is a collection agency with its principal place of business in California and a regional office in Wisconsin. Defendant collects debts from consumers using the mail and telephone.

Defendant's practice was to send a series of debt collection letters to debtors on behalf of its clients. These letters state the amount of the debt and provide information regarding the rights of the debtor.

Plaintiff's contact with defendant stemmed from her debt to a Minnesota law firm. In April 1998, the firm retained defendant to collect plaintiff's debt. Defendant sent letters to plaintiff on April 22, May 6, May 20, June 3, and June 17, 1998. Unbeknownst to defendant, the United States Bankruptcy Court for the Western District of Wisconsin issued plaintiff a discharge of debt on April 23, 1998.

The first four debt collection letters sent to plaintiff included a notice of her rights under the heading "Colorado." Over 50,000 other Wisconsin debtors may have received debt collection letters from defendant similar to those sent to plaintiff. The Colorado notice of rights misleads unsophisticated consumers by giving them the impression that those

rights are available only to Colorado residents and are not applicable to Wisconsin residents.

In early 1998, a federal district court found that defendant's practice of including the Colorado notice of rights to Illinois residents was false, deceptive and misleading in violation of the Fair Debt Collection Practices Act. *See Jenkins v. Union Corp.,* 999 F.Supp. 1120, 1144 (N.D.Ill.1998). Following the *Jenkins* decision, defendant took steps to revise its letters. On April 15, 1998, it changed the text of its letters but did not modify the Colorado notice of rights. A disclaimer referring to the Colorado notice of rights was not incorporated until June 5, 1998. The delay was apparently the result of complexities in the computer resources that generate the letters.

## OPINION

### A. Introduction

Plaintiff proposes a class defined as (i) all persons with addresses in the state of Wisconsin (ii) to whom letters were sent by defendant (iii) containing a notification of rights under the heading "COLORADO" (iv) in an attempt to collect a debt incurred for personal, family, or household purposes, (v) which letters were not returned as undelivered by the Post Office, (vi) and which were sent during the one year period prior to the filing of the complaint in this action.

■ Under Fed.R.Civ.P. 23, a plaintiff seeking class certification must satisfy two requirements. The plaintiff bears the burden of showing that those requirements have been met. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Retired Chicago Police Association v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993).

First, plaintiff's class must satisfy four prerequisites under Rule 23(a): (1) numerosity (the class is so large that joinder of all members is impracticable); (2) commonality (questions of law or fact are common to the class); (3) typicality (claims or defenses of named parties are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class). *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998).

■ If the four prerequisites are met, the class must also conform to at least one of the three categories set forth in Rule 23(b)(1), (2), or (3). *See Amchem Products,* 521 U.S. at 614, 117 S.Ct. 2231. In this case, plaintiff seeks certification under Rule 23(b)(2), which provides for certification of a class where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." *Id.* Plaintiff also seeks certification under Rule 23(b)(3). Although classes often qualify under more than one of the Rule 23(b) categories, courts generally prefer to certify classes under Rule 23(b)(1) or (2) before certifying under Rule 23(b)(3). *See DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1175 (8th Cir.1995); 5 James W. Moore et al., *Moore's Federal Practice* § 23.40[2]. The reason for this preference is that members of a class certified under Rule 23(b)(1) or (2) cannot opt out of the action, while members of a class certified under Rule 23(b)(3) are entitled to opt out and pursue individual suits. *See DeBoer,* 64 F.3d at 1175. Individual claims brought by members opting out of the class might prejudice other class members or cause inconsistencies and compromises in future litigation. *See id.* Because certification under Rule 23(b)(2) is appropriate in this case, there is no need to address whether certification is also appropriate under Rule 23(b)(3).

It is worth noting that the Fair Debt Collection Practices Act provides expressly for class actions, *see* 15 U.S.C. § 1692k(a)(2)(B), (b)(2), and that several courts have certified classes in claims under the act. *See Young v. Meyer & Njus, P.A.,* 183 F.R.D. 231, 235 (N.D.Ill.1998); *D'Alauro v. GC Services Ltd. Partnership,* 168 F.R.D. 451 (E.D.N.Y.1996); *Colbert v. Trans Union Corp.,* 1995 WL 20821 (E.D.Pa.1995); *Cheqnet Systems v. Montgomery,* 322 Ark. 742, 911 S.W.2d 956, 960 (1995).

## B. Rule 23(a)

### 1. Numerosity

 When the class is large, numbers alone may be dispositive of numerosity. *See Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986). Defendant does not challenge the numerosity of the proposed class. It responded in interrogatories that probably over 50,000 people with Wisconsin addresses were sent letters including the Colorado notice of rights. Clearly the numerosity requirement is satisfied.

### 2. Commonality

 The commonality requirement is satisfied when the defendant has engaged in standardized conduct towards members of the proposed class. *See Keele,* 149 F.3d at 594. In *Keele,* the court held that under the Fair Debt Collection Practices Act, the defendant engaged in standardized conduct towards all members of the class by mailing them form letters seeking a collection fee. *See id.* In this case, defendant engaged in standardized conduct by sending letters with the Colorado notice of rights to all members of the proposed class.

 Defendant argues that plaintiff fails to satisfy commonality because some letters sent to members of the proposed class were for the collection of commercial debts, rather than consumer debts. The act protects only against misleading communications in connection with consumer debts. *See* 15 U.S.C. § 1692a(5). Defendant contends commonality is not satisfied because distinguishing class members with consumer debts from those with commercial debts would be a "massive undertaking."

Defendant is wrong to suggest that having to separate consumer debts from commercial debts precludes certification. For example, in *Wilborn v. Dun & Bradstreet,* 180 F.R.D. 347, 357 (N.D.Ill.1998), the defendant argued that the difficulty in determining whether the debts of over 24,000 class members were consumer debts for purposes of the Fair Debt Collection Practices Act should preclude certification. *See id.* The district court rejected the argument, reasoning that the need to sift commercial debts from consumer debts is inherent in all class actions under the act and that the task "should be relatively straightforward." *See id.* The court recognized that if the need to parse debts precluded class certification, then as a practical matter there would be no class actions under the act. *See id.*

The reasoning in *Wilborn* is persuasive. Undoubtedly, separating consumer debts from commercial debts will take some effort. In some instances it may require scrutiny of the type of debt. But in many others, the determination may require only a simple check whether the debtor is an individual or business. In sum, the task of identifying consumer debts will not be such a "massive undertaking" as to preclude certification.

### 3. Adequacy of Representation

 Two factors are relevant when evaluating the adequacy of class representation: 1) whether the representative plaintiff's counsel is qualified and 2) whether the representative plaintiff has interests antagonistic to those of the class. *See Retired Chicago Police Ass'n,* 7 F.3d at 598. The record reveals that plaintiff's counsel is qualified to handle a class action suit and that plaintiff does not have interests antagonistic to the class.

Defendant makes several arguments contesting the adequacy of plaintiff's co-counsel, Carla Andres and O. Randolph Bragg. Defendant asserts that Andres's representation of plaintiff prior to this lawsuit indicates she is inadequate. Defendant points to Andres's failure to request that the creditor stop contacting plaintiff after her debt was discharged in bankruptcy and Andres's listing of the wrong zip code and address for the creditor in a bankruptcy notice. Finally, the defendant argues that Bragg is inadequate because he has been criticized in the past for using the FDCPA as a "fee-generating cash cow for lawyers."

 Counsel are qualified to represent plaintiff and the class. Andres's actions prior to this case are immaterial, now that she and Bragg will work together to represent plaintiff and the class in this case. Moreover, Bragg's ability to serve as counsel

in class actions and consumer suits has been recognized in other cases. *See Van Vels v. Premier Athletic Center of Plainfield, Inc.,* 182 F.R.D. 500, 511 (W.D.Mich.1998). Defendant's claim that Bragg uses the FDCPA as fee generating mechanism is not material to his adequacy. Defendant's concern actually supports his adequacy because it indicates that he has served as counsel on similar cases. That counsel may be using the act as a fee generating mechanism does not reflect on his ability to adequately represent the interests of the entire class. *See Gammon v. G.C. Services Ltd. Partnership,* 162 F.R.D. 313, 319 (N.D.Ill.1995) ("The mere fact that counsel frequently files class actions under the FDCPA hardly suffices to establish inadequacy. On the contrary, counsel's expertise in this area, as demonstrated by numerous actions under the FDCPA in which Gammon's attorneys have been appointed as class counsel ... only supports a finding of adequacy.")

Defendant also challenges the adequacy of plaintiff to represent the interests of the class. According to defendant, plaintiff is in a precarious financial position, has only a sketchy knowledge of her lawsuit, is indifferent to the fees and costs associated with the suit and is unmotivated to pursue the claim because her debt was discharged. None of these contentions have merit.

■■■■ First, a plaintiff's knowledge of the fee arrangements and suit are facts that are entitled to little weight when assessing adequacy of representation. *See Gammon,* 162 F.R.D. at 318 (plaintiff was adequate representative of class despite not knowing whether he reviewed the complaint in the case before it was filed, did not know whether he participated in discovery in the case and did not know who was paying his legal fees). As the court of appeals has stated:

> [T]he class representative's role is limited. It was found not to be enough to defeat a class certification in *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 366, 86 S.Ct. 845, 847–48, 15 L.Ed.2d 807 (1966), that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know

the defendants by name, nor even the nature of the misconduct of the defendants. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.,* 657 F.2d 890, 896 (7th Cir.1981). Plaintiff states in her declaration that she understands the claim made against defendant as well as her responsibilities as a named plaintiff. This is sufficient evidence that she has enough knowledge of this lawsuit to serve as class representative. Moreover, plaintiff's financial position, inability to pay legal fees and counsel's advancement of legal fees do not render her inadequate as a class representative. Representative plaintiffs are required to bear only their pro rata share of litigation costs. *See Rand v. Monsanto,* 926 F.2d 596 (7th Cir.1991). That counsel advanced plaintiff her pro rata share of legal fees does not jeopardize her ability to serve as the class representative. *See id.* at 599–600.

■■■■ Finally, plaintiff is an adequate representative of the class because the discharge of her debt leaves her no less motivated to pursue this claim. The act is designed to protect consumers from the abusive, deceptive and unfair debt collection practices of unscrupulous debt collectors, regardless whether a valid debt actually exists. *See Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir.1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992). The act does not discharge the consumer's underlying debt. Plaintiff and the other class members are motivated by the possibility of being awarded statutory damages and fees under the act, not by the possibility of discharging their debt. Plaintiff, therefore, is an adequate representative of the class because she has the same motivation to pursue the claim as the other class members.

### 4. *Typicality*

■■■■ The typicality requirement is satisfied if the class representative's claim arises from the same events, practice or conduct, and is based on the same legal theory as those of the other class members. *See 5 James W. Moore et al., Moore's Federal Practice 3d.* § 23.24[2]; *see also De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d

225, 232 (7th Cir.1983) (typicality satisfied because the claim stemmed from recruiting and disclosure practices that remained unchanged for several years and to which all class members were subject). In assessing typicality, the court considers the defendant's conduct and the plaintiff's legal theory. *See Rosario v. Livaditis,* 963 F.2d 1013, 1019 (7th Cir.1992). The typicality requirement may be satisfied even if there are factual differences between the claims of the representative plaintiff and the other class members. *See De La Fuente,* 713 F.2d at 232–33 (typicality satisfied despite fact that some of representative plaintiffs were employed for fewer years than other class members in suit brought pursuant to Labor Contractor Registration Act). The typicality requirement works to insure that defenses unique to only the representative plaintiff do not become the focus of litigation. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2nd Cir.1990).

 I conclude that plaintiff's claim is typical of the class. Like the rest of the class, plaintiff contends that the Colorado notice of rights included in defendant's collection letters violated the act. Her claim arises from the same conduct and practices by the defendant and is based on the same legal theory as the claims of the other class members.

Defendant's strongest argument against a finding of typicality is that two *bona fide error* defenses apply uniquely to plaintiff and not to the rest of the class. First, defendant argues that it had remedial procedures underway to correct the Colorado notice of rights on its collection letters, but that those corrections were not yet incorporated when the four letters were sent to plaintiff. Second, according to defendant, had plaintiff notified defendant of her bankruptcy, defendant would never have sent any letters to her.

Defendant's first defense is not unique to plaintiff. Defendant contends that it was already in the process of revising the notice of rights on its form collection letters when it sent plaintiff's letters, but that those changes had not yet been incorporated. However, the class includes all persons who received letters during the one year period prior to the filing of the complaint on July 13, 1998. Because defendant's efforts to revise its form letters began in April 1998, several months passed before the filing of the complaint during which defendant was in the process of revising its letters but continued to send collection letters with the Colorado notice of rights. Presumably plaintiff was not the only class member to receive a debt collection letter during this several month period; therefore this defense is not unique to plaintiff.

Defendant's second defense is that it would not have sent the letters to plaintiff had it known she was in bankruptcy. This fact may make plaintiff unique, but it does not defeat typicality. Plaintiff's sole claim is that the Colorado notice of rights included with defendant's letters was misleading. Thus, any defense to her claim must relate to the misleading Colorado notice of rights. That defendant would not have sent the letter to plaintiff had it known she was in bankruptcy is unrelated to defendant's reference to the Colorado notice of rights in its letters.

### C. Rule 23(b)

Having met her burden of showing that the class meets all four requirements of Rule 23(a), plaintiff's other task is to establish that the action conforms with one of the three categories of actions in Rule 23(b). I conclude that the class conforms with Rule 23(b)(2), which allows certification when declaratory relief predominates over monetary relief. I reject defendant's general objection to certification on the ground that the Fair Debt Collection Practices Act authorizes only nationwide classes, not the statewide class that plaintiff proposes. Plaintiff's statewide class is appropriate.

### 1. *Declaratory relief predominates over monetary relief*

 A court may certify a class under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to

the class as a whole." Fed.R.Civ.P. 23(b)(2). If a plaintiff requests both declaratory and monetary relief, the class is properly certified under Rule 23(b)(2), provided the request for declaratory relief predominates over the request for monetary relief. *See Gammon*, 162 F.R.D. at 320. Courts have found requests for declaratory relief to predominate over requests for monetary relief where the award of damages flows directly from the declaratory relief and where damages are easily calculated by a formula that is uniformly applicable to the class. *See Rice v. City of Philadelphia*, 66 F.R.D. 17, 20 (E.D.Pa.1974).

Because plaintiff requests both statutory monetary damages and declaratory relief arising from defendant's violation of the act, it must be determined whether her request for declaratory relief predominates over her request for monetary relief. *Gammon* is helpful in making this determination.

In *Gammon*, the plaintiff requested monetary damages and declaratory relief under the Fair Debt Collections Practices Act. *See* 162 F.R.D. at 320. The proposed class consisted of over 4 million members. Because under the act the maximum award is capped at $500,000, each class member could receive a maximum of 13 cents. The court concluded that the plaintiff's request for declaratory relief predominated over its request for monetary relief. The de minimis monetary relief each class member could potentially receive under the act was overshadowed by the declaratory relief sought. Moreover, monetary damages would flow directly from a declaratory judgment and those damages could be readily calculated on a classwide basis. *See id.* at 320–21.

■ Plaintiff's request for declaratory relief predominates over her request for statutory monetary relief for the same reasons as articulated in *Gammon*. First, the potential statutory damages each plaintiff could recover under the act are nominal. If the class has over 50,000 members, each would be entitled to less than ten dollars. From the figures, it is clear that a declaratory judgment of liability applicable to the whole class would substantially outweigh the monetary award to each class member. Second, if

plaintiff prevails on the issue of liability and is awarded declaratory judgment, monetary relief would automatically follow. Third, the potential monetary award would be readily calculable for the entire class. Each member would receive an equal share of the total recovery. Thus, there is no risk that unique damage issues would arise among class members. For these reasons, plaintiff's request for declaratory judgment predominates over her request for statutory monetary relief.

## 2. *A statewide class is appropriate*

■ Defendant argues that any form of certification is inappropriate because the act only authorizes a nationwide class, not a statewide class. According to defendant, statewide certification would leave the door open for a series of class actions against defendant in forty-eight other states. This is possible, but this court cannot predict with any certainty whether those claims will materialize. Of more significance, in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 347 (7th Cir.1997), the court rejected a claim that a class was improperly certified because it was a statewide class rather than a nationwide class.

In *Mace*, the plaintiff brought a statewide class action on behalf of debtors residing in Wisconsin who received collection letters from the defendant. *See id.* at 341. Although prior to *Mace*, the defendant had lost a statewide class action in Connecticut involving some of the same claims at issue in *Mace*, there was insufficient evidence to indicate that the defendant would be subject to class actions in other states. The court rejected the defendant's contention that a nationwide class was necessary, noting, "if a debt collector is sued in one state, but continues to violate the statue in another, it ought to be possible to challenge such continuing violations." *See id.* at 344.

This case mirrors *Mace*. The evidence is insufficient to indicate that defendant will be subject to class actions in several states. I see no reason why a statewide class is inappropriate.

## ORDER

IT IS ORDERED that the motion of plaintiff Mary Borcherding–Dittloff for class certification is GRANTED. The class is defined as follows: (i) all persons with addresses in the state of Wisconsin (ii) to whom letters were sent by defendant (iii) containing a notification of rights under the heading "COLORADO" (iv) in an attempt to collect a debt incurred for personal, family, or household purposes, (v) which letters were not returned as undelivered by the Post Office, (vi) and which were sent during the one year period prior to the filing of the complaint in this action.