**Sherri J. GRADISHER, Plaintiff,**

v.

**CHECK ENFORCEMENT UNIT, INC., Defendant.**

No. 100–CV–401.

United States District Court, W.D. Michigan, Southern Division.

Aug. 21, 2001.

Louis R. Lint, Louis R. Lint, PC, Muskegon, MI, O. Randolph Bragg, Horwitz, Horwitz & Associates, Chicago, IL, for plaintiff.

Donald L. Payton, Kaufman & Payton, Farmington Hills, MI, for defendant.

### OPINION

QUIST, District Judge.

Plaintiff, Sherri J. Gradisher ("Gradisher"), filed this action against Defendant, Check Enforcement Unit, Inc. ("CEU"), on behalf of herself and a proposed class alleging that CEU violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692–1692o, and its Michigan counterparts, the Michigan Collection Practices Acts, M.C.L. § 339.901–.920 and M.C.L. § 445.251–.258. On February 28, 2001, the Court issued an Opinion and Order denying CEU's motion for summary judgment. In that Opinion and Order, the Court determined that CEU is a "debt collector" under the FDCPA. *Gradisher v. Check Enforcement Unit, Inc.,* 133 F.Supp.2d 988, 990–92

(W.D.Mich.2001). In addition, the Court dismissed Gradisher's state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(1), leaving only the FDCPA claims. *Id.* at 993. Now before the Court is Gradisher's motion for class certification.

### I. *Facts*

The relevant facts set forth below are taken from the Court's prior Opinion regarding CEU's motion for summary judgment.

Muskegon County, Michigan (the "County") has an ordinance which prohibits, among other things, a person from uttering or delivering any check with the intent to defraud knowing at the time that the maker or drawer does not have sufficient funds on deposit to pay the check in full. Muskegon County Check Violation Ordinance § 3.A (1996). The refusal of the drawer of the check to pay the check "is prima facie evidence of intent to defraud and of knowledge of insufficient funds . . . *provided such maker . . . shall not have paid the drawee thereof the amount due thereon, together with all cost and protest fees, within five (5) business days after receiving notice that such check, draft or order has not been paid by the drawee."* *Id.* § 3.C (emphasis added).

To assist in enforcing this ordinance, Muskegon County has entered into a written contract ("Contract") with CEU, a corporation organized under the Michigan Business Corporation Act. The Contract recognizes CEU as an independent contractor. The Contract provides that CEU shall "process, recover, investigate, and assist in the enforcement of dishonored checks in violation of 'applicable state laws or township ordinances' as submitted by merchants, businesses and citizens for violations occurring" within certain areas in the County not served by municipal police departments. (Contract ¶ 1, Def.'s Reply Br. Ex. B.) Merchants sign up to use Defendant's services by paying an $85.00 fee to CEU. Thereafter, if a check payable to one of these merchants is dishonored, the check is forwarded to Defendant, generally directly from a financial institution. Defendant then attempts to collect the

amount of the check, plus a bank fee and a government assessment fee.

In addition to fees from merchants, CEU receives $21.50 from the County for each check that is paid to it. This money is deducted by the County from the $25.00 government assessment fee the County receives on each check. The County then submits the money to CEU.

Addendum IV to the Contract sets forth the three steps CEU is to take in its collection attempts:

First:    Due Process Notice—5 day notice to establish intent to defraud a merchant

Second: Final Notice—outlines violation of criminal law

Third:    Interview Notice—to be held at law enforcement agency

(Contract Addendum IV.) The County provides CEU with its stationery to mail out these forms. CEU composed the text of these notices, though the County reviewed the text when it signed the Contract. CEU admits mailing letters in the form of the Due Process Notice, the Final Notice, and the Interview Notice to more than 5,000 Michigan residents. (Def.'s Resp. Pl.'s First Discovery Request ¶ 63–65, Pl.'s Statement of Material Facts Ex. I.)

This case arises out of the activities of CEU relating to a bad check that Plaintiff wrote to a local steakhouse. CEU sent Plaintiff a Due Process Notice, Final Notice, and Interview Notice, requesting Plaintiff to submit to CEU two cashier's checks or money orders, one for the amount of the debt owed plus bank fees, which totaled $85.30, payable to Doug Born's Smokehouse, and another for $25.00, payable to Muskegon County, for a government assessment fee.

*Id.* at 988–89.

## II.  *Gradisher's Claims*

Gradisher alleges that CEU violated the following provisions of the FDCPA:

## § 1692e.  False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*     \*     \*     \*     \*     \*

(2) The false representation of—

(A) the character, amount, or legal status of any debt . . . .

\*     \*     \*     \*     \*     \*

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

\*     \*     \*     \*     \*     \*

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

\*     \*     \*     \*     \*     \*

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

\*     \*     \*     \*     \*     \*

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

\*     \*     \*     \*     \*     \*

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

### § 1692f. Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

### § 1692g. Validation of debts.

(a) **Notice of debt; contents.** Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. §§ 1692e(2)(A), (5), (7), (9), (11), (13), (14).

Specifically, Gradisher claims that the Due Process Notice, the Final Notice, and the Interview Notice violated 15 U.S.C. §§ 1692e(2)A, (5), (9), (13), and (14) and 1692f(1) because they: (i) impersonated a governmental entity (the County); (ii) were sent without the intent to issue an arrest warrant or without legal authority to do so; and (iii) misrepresented the character, amount, or legal status of the alleged debt. Gradisher also claims that the Due Process Notice, the Final Notice, and the Interview Notice violated 15 U.S.C. 1692g(a) because they did not contain the required debt validation notice. In addition, Gradisher claims that the Due Process Notice, the Final Notice, and the Interview Notice violated 15 U.S.C. § 1692e(11) by omitting the debt collection warning required by that section. Finally, Gradisher claims that CEU violated 15 U.S.C. § 1692e(7) by sending collection letters falsely implying that the consumer committed a crime.

### III. Standard for Certification

The Supreme Court has required district courts to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Before certifying a class, a district court must determine whether the action satisfies all four prerequisites in Fed.R.Civ.P. 23(a) and at least one of the conditions in Fed.R.Civ.P. 23(b). *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996). The movant bears the burden of proof. *Id.* "Although a hearing prior to the class determination is not always required, 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Id.* (quoting *Gen. Tel. Co.*, 457 U.S. at 160, 102 S.Ct. at 2372).

### IV. Discussion

Gradisher seeks certification of the following class on all claims pursuant to Fed. R.Civ.P. 23(b)(2) and (b)(3):

(i) all persons in the state of Michigan (ii) to whom a letter in the form of *Exhibit A*,

*B, C, or D* (attached to the complaint) was sent by [CEU] (iii) in an attempt to collect a dishonored check (iv) which, according to the nature of the creditor or the debt, or the records of the creditor or defendant, was written for personal, family, or household purposes (v) which was not returned as undelivered by the U.S. Post Office (vi) during the period of June 2, 1999 through June 2, 2000.

(Pl.'s Mot. Class Certification at 1.)

## A. Prerequisites of Fed.R.Civ.P. 23(a)

Rule 23(a) provides that a class may be certified

only if (1) the class is so numerous that joinder of all parties is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

### 1. Numerosity

■ Numerosity exists where "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Whether joinder is impracticable depends on the particular circumstances of each case. *Weaver v. Reagen,* 701 F.Supp. 717, 721 (W.D.Mo.1988). Factors that a court may consider are class size, ease of identification of class members, and the ability of class members to pursue individual actions. *See Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir.1986). A plaintiff need not prove the number of class members to a certainty. *See Kurczi v. Eli Lilly & Co.,* 160 F.R.D. 667, 672 (N.D.Ohio 1995). The Court may make common sense assumptions in examining the numerosity requirement. *See Vickery v. Jones,* 856 F.Supp. 1313, 1328 (S.D.Ill.1994). While not an absolute rule, it is generally accepted that a class of 40 or more members is sufficient to establish numerosity. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995)(stating that "numerosity is presumed at a level of 40 members")(citing 1 *Newberg On Class Actions, 2d,* § 3.05 (1985 ed.)).

■ With regard to numerosity, Gradisher has presented evidence that CEU has sent out more than 5000 Due Process Notices, Final Notices, and Interview Notices, and at least 100 collection letters in the form of Exhibit D attached to the complaint to Michigan residents. (Def.'s Answers to Pl.'s 1st Disc. Req., Req. for Admis. 54, 63–65, Pl.'s Mem. Supp.App. A.) CEU asserts that this evidence renders numerosity "inherently suspect" because the numbers do not take into consideration that a large portion of letters CEU sent out dealt with bad checks written for business or commercial purposes not covered by the FDCPA. The Court also notes that another potential difficulty with the numbers taken from CEU's answers to the Gradisher's request to admit is that there is no indication how many of those notices or letters were sent out during the class period of June 2, 1999 through June 2, 2000.

In spite of these apparent problems with Gradisher's evidence, the Court concludes that the numerosity requirement is satisfied. The Court rejects CEU's argument because, in spite of its claim that a large portion, if not most, of the bad checks were for business purposes, CEU has failed to quantify the percentage of checks it handles that are for personal, family, or household purposes. For example, fifty-five percent of the bad checks CEU handles may be for business purposes. This still leaves approximately 2,250 of each type of notice sent out by CEU. That information is within CEU's control, and if the percentage of those notices relating to consumer checks is too small to warrant class certification, as CEU insinuates, CEU had the means to present evidence to the Court showing an insignificant percentage. With regard to the problem identified by the Court—no indication that CEU sent the notices to the prospective class members within the defined class period—Gradisher has presented evidence showing that the notices were sent out between February 1997 and October 2000. (Pl.'s Supplemental Statement of Material Facts ¶ 78 (citing Smith Dep. at 41, Pl.'s Supplemental Statement of Material Facts App. L.)) While this

period commenced over two years prior to the class period and extended several months beyond the class period, it is reasonable to infer that at least 500, and likely more, of each type of notice was sent out during the class period. A class of that size is sufficient to demonstrate impracticability of joinder.

### 2. Commonality

■ The second prerequisite to class certification is that "there [be] questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "Where the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected." *Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009, 1015 (W.D.Mich.1987). The commonality requirement is generally met where the defendant has "engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998).

■ Gradisher has raised a number of issues that are common to the class, all of which revolve around the legality of the notices or letters under the FDCPA. *See Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.*, 182 F.R.D. 500, 507 (W.D.Mich.1998)(stating that "[i]n cases involving the question of whether a defendant has acted through an illegal policy or procedure, commonality is readily shown because the common question becomes whether the defendant in fact acted through the illegal policy or procedure"). Whether the notices or letters contained or were required to contain the debt validation notice required under § 1692g(a) is one example of a common question.

CEU contends that Gradisher cannot establish common questions of law or fact because there is no way to ascertain whether the notices or letters were sent in an effort to collect a personal, family, or household debt. CEU's argument is really addressed to the predominance inquiry under Rule 23(b)(3) rather than to commonality. In any event, the Court rejects CEU's argument, just as many courts have done in other cases. As the court observed in *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347 (N.D.Ill. 1998): "The need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class actions [sic]. If that need alone precluded certification, there would be no class actions under the FDCPA." *Id.* at 357. That court concluded that the process of determining whether a debt was a consumer debt would be "relatively straightforward" because that information could be obtained from the defendant's own customers. *Id.* In *Ditty v. CheckRite, Ltd.*, No. 2:95–CV–430C, 1998 WL 663357, 1998 U.S. Dist. LEXIS 12940 (D.Utah Aug.13, 1998), the court stated with respect to the form of class notice that "the use of a personal check, as identified on the defendants' computer system, creates a rebuttal [sic] presumption that the debt was consumer in nature and is sufficient to make out plaintiffs' prima facie case. If the defendants wish to rebut that presumption in individual cases, they are free to do so." *Id.* at *2, 1998 U.S. Dist. LEXIS 12940, at *5–6 (citation omitted). While the determination of whether each check was written for personal or business purposes may take some effort, the Court does not believe that the task would be extraordinarily difficult because the nature of the check, i.e., personal or business, should indicate the type of debt. CEU might even be able to make the determination by obtaining information from the merchants that used CEU's services. Furthermore, "[s]uch issues of proof, should they arise, can be addressed 'in a manner which will not require the testimony of each and every' recipient of the [ ] letter." *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 106 (W.D.Va.2000)(rejecting the argument that determination of the status of the debt as consumer debt predominated over common issues).

### 3. Typicality

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "requires a demonstration that there are other members of the

class who have the same or similar grievances as the plaintiff." *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir.1983).

> [W]hen such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his. or her claims are based on the same legal theory.

*Am. Med. Sys.*, 75 F.3d at 1082 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3–13, at 3–76 (3d ed.1992)(omitting footnote)).

The Court concludes that the typicality requirement is satisfied because Gradisher's FDCPA claims are based upon similar facts and arise from CEU's standard practices and procedures, which Gradisher alleges violated the FDCPA. CEU argues that Gradisher's claims are not typical of the class because Gradisher does not fear criminal prosecution, while most of the members of the putative class would prefer not to face increased scrutiny for their allegedly criminal act (of writing a bad check) by joining the class. CEU contends that in order to recover as part of the class, class members would have to admit whether they intended to honor the check giving rise to their claim. CEU cites no authority for this proposition. In any event, the Court rejects the argument because the "language [of the FDCPA] focuses primarily, if not exclusively, on the conduct of debt collectors, not debtors." *Keele*, 149 F.3d at 595. Moreover, the protections of the FDCPA extend to all debtors, even "those who willfully refuse to pay their debts . . . [or] write checks, knowing they will be dishonored." *Id.* at 596. Because intent is not an issue in this case, *see Irwin v. Mascott*, 96 F.Supp.2d 968, 976 (N.D.Cal.1999), the putative class members should have no concern about making admissions giving rise to criminal liability. Moreover, any potential class member having such concerns will be able to opt out of the class.

### 4. Adequacy

■ The fourth prerequisite to class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This "requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Am. Med. Sys.*, 75 F.3d at 1083. CEU does not challenge the ability of Gradisher's counsel to fairly and adequately represent the class. However, CEU contends that Gradisher cannot fairly and adequately represent the class because her claim is antagonistic towards the other members' claims. The basis for this argument is essentially the same as that for CEU's typicality argument—that members of the class who do not opt out may unwittingly admit themselves into criminal liability although preferring not to do so, while Gradisher is apparently unconcerned about criminal liability. CEU also contends that because of the inherent conflict between civil enforcement of FDCPA rights and criminal liability for writing a bad check, criminal counsel will either have to be appointed and/or retained for every member of the class. The Court rejects this argument for the same reasons it rejected CEU's typicality argument. Because the only issues of intent in this case relate to CEU, there will be no need to delve into the class members' intent in writing the checks. Because CEU has not identified any other basis for concluding that Gradisher would not be an adequate representative, the Court concludes that this requirement has been met.

### B. Requirements of Fed.R.Civ.P. 23(b)

#### 1. Rule 23(b)(3) Requirements

A class may be certified under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [ ] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). In determining whether certification of a Rule 23(b)(3) class is warranted, courts should consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

■ The first question the Court must consider in determining the propriety of Gradisher's proposed Rule 23(b)(3) class is whether the predominance requirement is met. While some courts have observed that a finding of commonality will generally satisfy the predominance requirement, *see Clark v. Retrieval Masters Creditors Bureau, Inc.,* 185 F.R.D. 247, 250 (N.D.Ill.1999), the Sixth Circuit has stated that the predominance requirement is "more stringent." *Am. Med. Sys.,* 75 F.3d at 1084. As indicated above, CEU's commonality argument is the same as its predominance argument, namely, that the determination of the status of each debt as being for personal, family, or household purposes will predominate over the issues regarding whether the notices and letters sent by CEU violated the FDCPA. The Court rejects this argument because, as discussed above, there are a number of relatively straightforward ways of handling this issue without it overshadowing the common issues of fact and law identified by Gradisher. This information can be gleaned through a review of the checks at issue (perhaps creating a rebuttable presumption of a consumer debt for personal checks), from CEU's own customers, or through one simple question to each class member.

■ The other question to be answered is whether the form of a class action is superior to other methods for handling the controversy. The Court concludes that the circumstances in this case render a class action the superior method to resolve this case. To this Court's knowledge, no other action has been filed against CEU alleging FDCPA violations with respect to the notices and letters used by CEU. Moreover, the substance of the claims in this case, which are based upon the same form notices or letters sent to members of the class, as well as the likelihood that the claims of each class member are relatively small, render class treatment the most efficient and appropriate means of resolving this litigation. In light of the relatively small amounts of the claims of the class members, it is unlikely that any class member would have a greater interest in pursuing a claim on an individual rather than class basis.

It would also be more desirable to have all the class claims pending in one court in order to save costs, promote the efficient use of judicial resources, and ensure that similar claims are treated in a consistent manner. Thus, maintenance of a class action in this Court would be consistent with the policies supporting class actions. CEU's argument that this case would not be manageable as a class action because of the potential concerns of class members of facing criminal liability by participating in this suit fares no better under the superiority inquiry than it did under the typicality and adequacy inquiries.

### 2. Rule 23(b)(2) Certification

Gradisher also seeks certification under Rule 23(b)(2). A class may be certified under that rule if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. 23(b)(2). Gradisher contends that certification under Rule 23(b)(2) is appropriate because she requests a declaration that CEU violated the FDCPA and CEU has acted in a manner generally applicable to class members.

■ Courts have held that where the plaintiff seeks damages as well as injunctive or declaratory relief, the propriety of certification turns on whether the injunctive or declaratory relief predominates over any monetary damages. *See Eubanks v. Billington,* 110 F.3d 87, 92 (D.C.Cir.1997); *Butler v. Sterling, Inc.,* No. 98–3223, 2000 WL 353502, at *6 (6th Cir. Mar.31, 2000)(noting that "all other circuits that have considered the issue have held that certification of a 23(b)(2) class

turns on whether the injunctive and/or declaratory relief sought on behalf of the class 'predominate[s]' relative to any incidental monetary damages requested")(citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir.1998)). In support of her contention that the class may be certified as a Rule 23(b)(2) class, Gradisher cites several FDCPA cases in which courts held that requests for declaratory relief predominated over requests for statutory monetary relief. *See Borcherding–Dittloff v. Transworld Sys., Inc.*, 185 F.R.D. 558, 566 (W.D.Wis.1999); *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 320–22 (N.D.Ill.1995). In *Gammon*, the court held that certification under Rule 23(b)(2) was proper because the nonmonetary relief of a declaratory judgment predominated over the monetary relief sought. The court observed that if the plaintiff prevailed on liability, the class members, numbering over four million individuals, would recover approximately 13 cents each in statutory damages. The court found further support for its conclusion because the damages would flow from the declaratory judgment and the amount of damages could be readily calculated under the statutory damage formula. *Id.* at 321. In *Borcherding–Dittloff*, the court followed *Gammon* and concluded that the plaintiff's request for declaratory relief predominated over her request for damages because the potential statutory damages each class member could recover was small (under $10) and because damages were based upon a statutory formula, there was no risk that a damage calculation would be required for each class member. *Borcherding–Dittloff*, 185 F.R.D. at 566.

Other courts have rejected Rule 23(b)(2) certification in FDCPA cases. In *Connor v. Automated Accounts, Inc.*, No. CS–99–0270–EFS, 2001 WL 845356 (E.D.Wash. July 18, 2001)(to be reported in Federal Rules Decisions), the court held that a Rule 23(b)(2) class could not be maintained because liability under the FDCPA sounds in tort and the relief provided by statute is money damages. *Id.* at *4. In *Cope v. Duggins*, No. Civ. A. 98–3599, 2000 WL 381928 (E.D.La. Apr.13, 2000), the court held that the plaintiffs' action under the FDCPA should be certified under Rule 23(b)(3) but denied certification under

Rule 23(b)(2). Citing the Fifth Circuit's decision in *Washington v. CSC Credit Services, Inc.*, 199 F.3d 263 (5th Cir.2000), in which the Fifth Circuit held that the district court should not have certified a claim under the Fair Credit Reporting Act as a Rule 23(b)(2) class, the *Cope* court stated that because the plaintiffs' claims sought primarily money damages, the class could not be certified as a Rule 23(b)(2) class. *Cope*, 2000 WL 381928, at *3 n. 1. In *Washington*, the Fifth Circuit held that because the plaintiffs sought actual and punitive damages, it would have been "counterintuitive to say that in their case, declaratory relief, which might hypothetically be used as the basis for future action by the FTC 'predominates' over monetary relief, which will directly and immediately benefit them." *Washington*, 199 F.3d at 269. In addition, the court stated that "because the money damages in this case do not flow from the declaratory relief but require separate adjudication, they predominate [over declaratory relief]." *Id.*

■ Although there are cases supporting either result, the Court concludes that the proposed class in this case should not be certified as a Rule 23(b)(2) class. The Fifth Circuit's decision in *Washington* could be distinguished from this case on the basis that the Fair Credit Reporting Act does not contain statutory damage provisions for class actions similar to those included in the FDCPA. However, this Court finds applicable the Fifth Circuit's observation that the class in that case would receive a more immediate benefit from a damage award than they would receive from declaratory relief. The same is true here. Declaratory relief is unnecessary for the class to recover damages, and in reality adds nothing more to the case. Moreover, while this Court does not hold that Rule 23(b)(2) certification is inappropriate in all FDCPA cases, the Court concludes that it is in this case because Gradisher has not shown that the potential statutory award to each class member is a few dollars or cents, as was the case in *Gammon* and *Borcherding–Dittloff*. Therefore, the Court will not certify the class under Rule 23(b)(2).

## C. Timeliness

CEU's final argument is that the Court should deny Gradisher's motion because the motion was untimely. The Court rejects this argument. While it is true that Gradisher did not file her motion as soon as she could have, her failure to do so was not out of neglect or lack of diligence, but rather because the parties and the Court thought it prudent to focus first upon CEU's status as a debt collector under the FDCPA before addressing any other issue. Pursuant to that understanding, the Court decided the issue of CEU's debt collector status, and Gradisher filed her motion a few months later. Therefore, the Court finds that Gradisher's motion was timely.

## *Conclusion*

For the foregoing reasons, the Court will grant Gradisher's motion for class certification in part and certify the class pursuant to Fed.R.Civ.P. 23(b)(3).

An Order consistent with this Opinion will be entered.