Jeffrey L. GAMMON, on behalf of himself and all others similarly situated, Plaintiff,

v.

GC SERVICES LIMITED PARTNERSHIP, Defendant.

No. 93 C 5338.

United States District Court, N.D.Illinois, Eastern Division.

June 26, 1995.

Stephen B. Diamond, James S. Shedden, David J. Philipps, Lawrence Wiley Schad, Beeler, Schad & Diamond, P.C., Edward T. Joyce, Arthur W. Aufmann, Edward T. Joyce & Associates, Chicago, IL, for plaintiff Jeffrey L. Gammon, Individually and on behalf of all others similarly situated.

Daniel P. Shapiro, Steven A. Levy, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, for defendant GC Services Ltd. Partnership.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Jeffrey Gammon ("Gammon") sues defendant GC Services Limited Partnership ("GC Services") seeking redress for alleged false representations in connection with GC Services' standard debt collection letter. Gammon alleges that the false representations amount to a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e ("FDCPA"). Pursuant to Federal Rule of Civil Procedure 23, Gammon moves for class certification. Specifically, Gammon proposes that tne class be defined as all persons from whom GC Services has attempted to collect debts since August 31, 1992 [1] by use of the same form collection letter. The proposed class is comprised of over four million individuals. Pl.'s Mot. Class Cert. at 2.

### BACKGROUND [2]

■ On approximately September 3, 1992, GC Services, a debt collection agency, sent

---

1. Claims under the FDCPA must be brought within one year of the date on which the alleged violation occurred, 15 U.S.C. § 1692k(d). This complaint was filed on August 31, 1993.

2. When evaluating a motion for class certification, the Court accepts all well-pleaded facts as true. *See Hardin v. Harshbarger,* 814 F.Supp. 703, 706 (N.D.Ill.1993) ("the allegations made in

Gammon a form collection letter containing the following language:

> Your account with Mastercard has been referred to us for immediate attention.
>
> You should know that we are an experienced collection agency. *We provided the systems used by a major branch of the federal government and various state governments to collect delinquent taxes.*
>
> We have collected millions of accounts from people in similar circumstances. Now we intend to collect your debt. We know what we are doing, and we are very efficient. We have handled every kind of account—and dealt with every kind of excuse.
>
> *You must surely know the problems you will face later if you do not pay.* Send us your payment in full in the enclosed envelope, which is directed to the post office box we maintain for Mastercard accounts.

Complaint ¶ 5 (emphasis added).

Gammon alleges that the language contained in GC Services' standard collection letter connotes that GC Services is vouched for by, affiliated with, or acting on behalf of both federal and state government in connection with the collection of Gammon's debt. *Id.* ¶ 6. Gammon further alleges that a "least sophisticated consumer" standard must be applied to any statements made by GC Services. *Id.* While GC Services may indeed provide collection services to federal and state government, and thus the statements may literally be true, Gammon alleges that the least sophisticated consumer would interpret such statements to mean that GC Services is vouched for by or affiliated with federal and state government. *Id.* ¶ 7. Gammon alleges that GC Services includes the above language in its collection letter in order to imply to debtors that GC Services is vouched for by or affiliated with federal or state government, and that GC Services' actions violate the FDCPA. *Id.* ¶¶ 7–8.

support of certification are taken as true"); *Allen v. City of Chicago*, 828 F.Supp. 543, 550 (N.D.Ill. 1993) (same). Accordingly, the following recitation of background facts is derived from the allegations of the complaint.

## PROCEDURAL HISTORY

Based on an initial review of Gammon's complaint, Judge Shadur—to whom this case was originally assigned[3]—*sua sponte* dismissed the case for lack of subject matter jurisdiction. The Court of Appeals for the Seventh Circuit reversed, holding that Gammon's complaint successfully stated a claim upon which relief can be granted. *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1256 (7th Cir.1994). In addition, the Court of Appeals reformulated and replaced the "least sophisticated consumer" standard with an "unsophisticated consumer" standard to reflect an objective element of reasonableness. *Id.* at 1257. The court then found that an unsophisticated consumer reasonably could interpret the statement "We provided the systems used by a major branch of the federal government and various state governments to collect delinquent taxes" to imply that those governmental bodies vouch for or are affiliated with GC Services, and that the debtor would face future "problems" with "a major branch of the federal government" because of GC Services' development of the government's "systems." *Id.* at 1257–58. The case was remanded for further proceedings and subsequently reassigned to this Court, which now addresses Gammon's motion for class certification.

## ANALYSIS

The FDCPA expressly provides for class actions. *See* 15 U.S.C. § 1692k(a)(2)(B). In the case of a class action under the FDCPA, the named plaintiff may recover statutory damages up to $ 1,000 for himself; for the class as a whole, damages are capped at $ 500,000 or 1% of the net worth of the defendant, whichever is less. *Id.* The class may also recover costs and reasonable attorney's fees. 15 U.S.C. § 1692k(a)(3). In addition, actual damages are available under the FDCPA, *see* 15 U.S.C. § 1692k(a)(1), but are not sought in the instant case.

3. This case was reassigned to this Court's calendar on August 17, 1994, based on its relatedness to another case on this Court's docket, pursuant to local General Rule 2.31.

■ The party seeking class certification bears the burden of establishing that certification is proper. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993).

■ Rule 23 requires a two-step analysis to determine whether class certification is appropriate. First, the action must satisfy all four requirements of Rule 23(a). That is, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993) (internal quotation marks omitted). "All of these elements are prerequisites to certification; failure to meet any one of these precludes certification as a class." *Retired Chicago Police,* 7 F.3d at 596; *Harriston,* 992 F.2d at 703. Second, the action must satisfy one of the conditions of Rule 23(b). *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977). Gammon seeks certification under Rule 23(b)(2), which provides:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition
>
> . . . . .
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]

FED.R.CIV.P. 23(b)(2).

■ Gammon maintains that all of the requirements of Rule 23(a) and (b)(2) are met. GC Services does not contest that Gammon satisfies Rule 23(a)(1)–(3) (*i.e.,* the numerosity, commonality, and typicality prerequisites)[4], but contends that Gammon fails to satisfy Rule 23(a)(4) and 23(b)(2). Accordingly, we address only these latter two requirements for Rule 23(b)(2) certification below.

A. Rule 23(a)(4)

■ Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a)(4). The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, *Rosario v. Livaditis,* 963 F.2d 1013 (7th Cir.1992); (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy," *Riordan v. Smith Barney,* 113 F.R.D. 60, 64 (N.D.Ill. 1986); and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. *Id.* GC Services asserts both that Gammon is an inadequate class representative due to his unfamiliarity with this litigation and that his counsel is inadequate class counsel as demonstrated by an alleged pattern of attorney-driven class actions. Although neither assertion directly invokes any of the three elements of Rule 23(a)(4), we will nevertheless address GC Services' arguments below.

■ GC Services first charges that Gammon is not an adequate class representative because his deposition testimony reveals that he is uninformed as to the substance and status of the litigation he has initiated. In support of its assertion, GC Services alleges that Gammon incorrectly stated that he had never before been a plaintiff in a lawsuit,

4. The Court's own independent review of these criteria also finds the numerosity, commonality and typicality prerequisites to be satisfied by the plaintiff class. First, the proposed class consists of four million individuals, and thus is clearly "so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). Second, the fact that GC Services sent the same standard debt collection letter to all members of the proposed class suffices to provide a "common nucleus of operative fact," *see Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992) (citing *Franklin v. City of Chicago,* 102 F.R.D. 944, 949–50 (N.D.Ill. 1984)), thereby satisfying Rule 23(a)(2)'s commonality requirement. Third, the typicality requirement of Rule 23(a)(3) is satisfied because Gammon's claim rests on the theory that GC Services' standard debt collection letter violates the FDCPA, and thus arises "from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (quoting H. NEWBERG, CLASS ACTIONS § 115(b) at 185 (1977)).

when in fact he had initiated three lawsuits under the FDCPA within the past year;[5] that he was not aware of the status or disposition of these three earlier cases; that he could not remember whether he had reviewed the complaint in the instant action before it was filed;[6] that he could not respond appropriately to a question relating to whether he had participated in discovery in the instant case;[7] that he incorrectly believed that GC Services was paying his ongoing legal fees; that he did not know the amount of damages that each proposed class member would receive should the class action prevail, and was surprised when told that damages would be minimal; and that he believed his duties as class representative merely entailed "go[ing] to court ... [and] on the witness stand and things like that." Def.'s Mem. Opp. Class Cert. at 2–10. These facts are entitled to little weight, however, when assessing adequacy of representation. As the Seventh Circuit has stated, "[T]he class representative's role is limited. It was found not to be enough to defeat a class certification in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, 86 S.Ct. 845, 847–48, 15 L.Ed.2d 807 (1966), that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name,

nor even the nature of the misconduct of the defendants." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir.1981) (citations omitted), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). *See also Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 676 (N.D.Ill.1989) (noting generally that lack of sophistication does not necessarily render a class representative inadequate); *Avila v. Van Ru Credit Corp.*, 1995 WL 41425 at *10 (N.D.Ill. Jan. 31, 1995) (finding that class representative's unfamiliarity with several facts of the case, including the amount of damages at stake, was insufficient to render him inadequate). Gammon asserts that he read the letter at issue and found it threatening because he believed GC Services to be somehow involved with "the government and taxes;" that the purpose of his litigation is to force GC Services to change the letter; that he understands the nature of a class action and his duties as class representative; that he spoke to his attorney before the complaint was filed; that he is familiar with the status of his lawsuit; and that he understands that damages will be awarded at the discretion of the Court. App. A, Def.'s Mem. Opp. Class Cert. at 24–25, 31–32, 38–39. Accordingly, we find that Gammon is an adequate class representative under Rule 23(a)(4).

5. GC Services' claim that Gammon is an inadequate class representative because he could not recall having initiated earlier lawsuits is somewhat weakened by a review of the deposition transcript, in which Gammon merely appears to be confused by the questioner's use of the term "plaintiff." Def.'s Mem.Opp. Class Cert., App. A at 11.

6. GC Services, citing *Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 118 (N.D.Ill.1993), suggests that Gammon's inability to recall whether he read the complaint prior to filing may alone be sufficient to demonstrate his inadequacy. In *Williams*, however, the named plaintiff to which GC Services apparently refers had agreed to participate in the litigation as a named plaintiff for no other reason than to "help" the plaintiffs' attorneys, who had represented him in prior lawsuits. *Id.* at 117. He did not speak to plaintiffs' counsel before the original complaint was filed, nor did he read the amended complaint in which he appeared as a named plaintiff. *Id.* at 118. In contrast, Gammon initiated the contact with his attorneys after receiving the letter at

issue in the instant case, spoke to his attorneys before the complaint was filed, and stated that he understands that his duty as named plaintiff is to "represent the people." App. A, Def.'s Mem. Opp. Class Cert. at 13, 24–25.

7. A review of the deposition transcript suggests that Gammon merely is confused by the questioner's use of the legal term "discovery." Def.'s Mem. Opp. Class Cert. at 26–27. GC Services also alleges that Gammon's deposition testimony reveals that he may not have participated in responding to discovery and may have falsely verified interrogatory answers. *Id.* at 7. In support of its assertion, GC Services cites from the deposition transcript the following exchange between Gammon and his attorney:

Q: Did you receive written questions from the defendants in this case and requests for documents?
A: What is that?
Q: I will skip the question.

*Id.* This exchange is insufficient to support GC Services' assertion that Gammon is not a credible representative.

GC Services next charges that Gammon's attorneys do not constitute adequate class counsel because (1) they have not kept Gammon apprised of the status of settlement negotiations; (2) their selection of Gammon as class representative exhibits such poor judgment as to prove them inadequate to represent the interests of the proposed class; and (3) they have demonstrated a pattern of litigating class actions under the FDCPA, selecting uninformed and uninvolved persons as class representatives and suggesting to these clients that their lawsuits be filed as class actions. First, Gammon denies that he is unaware of the existence of settlement offers. Indeed, he exhibits a general awareness of the status of settlement negotiations in his case. *See* Repl.Supp.Mot. Class Cert. at 6. In his deposition, Gammon stated accurately that settlement negotiations may have begun but that nothing was finalized. App. A, Def.'s Mem. Opp. Class Cert. at 36. Second, GC Services' argument that Gammon's selection as class representative necessarily reflects the inadequacy of Gammon's counsel is easily disposed of in light of the Court's finding above that Gammon is an adequate class representative. Third, GC Services' suggestion that inadequacy of counsel is demonstrated by the fact that Gammon's attorneys have filed repeated, attorney-driven class actions under the FDCPA is unconvincing. The mere fact that counsel frequently files class actions under the FDCPA hardly suffices to establish inadequacy. On the contrary, counsel's expertise in this area, as demonstrated by numerous actions under the FDCPA in which Gammon's attorneys have been appointed as class counsel, *see* Exh. E, Pl.'s Mot. Class Cert., only supports a finding of adequacy. GC Services attempts to support its assertion of an inappropriate pattern of behavior by noting the existence of another class action filed by the same attorneys in which the named plaintiff was unfamiliar with the issues in his case. GC Services neglects to mention, however, that class certification was granted in that case. *See Blum v. ACB Business Servs.,* No. 93 C 5210, Minute Order (N.D.Ill.

Mar. 20, 1995). Indeed, "class actions are inevitably the child of the lawyer rather than the client when the client's recovery is going to be small in relation to the costs of prosecuting the case." *Williams v. Balcor Pension Investors,* 150 F.R.D. 109, 118 (N.D.Ill. 1993). Accordingly, we find class counsel to be adequate under Rule 23(a)(4).

### B. Rule 23(b)(2)

A court may grant class certification pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R.CIV.P. 23(b)(2). Rule 23(b)(2) generally does not require notice to class members or allow members to opt out of the class, nor does it extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages. *Fontana v. Elrod,* 826 F.2d 729, 732 (7th Cir.1987) ("Class actions under FED.R.CIV.P. 23(b)(2) ... are primarily designed for injunctive and declaratory relief and, when employed in this fashion, do not require notice nor an opportunity to opt out of the class."); RULES ADVISORY COMM. NOTES TO 1966 AMENDS. TO RULE 23, 39 F.R.D. 69, 103 (1966).

Gammon contends, and GC Services does not dispute, that GC Services has acted on grounds generally applicable to the class. Gammon's claim thus fits neatly into this provision of Rule 23(b)(2), as the sole issue raised is whether the language of GC Services' standard debt collection letter, sent to all proposed class members, violates the FDCPA.

In his complaint, Gammon requests injunctive relief, declaratory relief, and statutory damages.[8] Complaint at 5–6. GC Services, however, correctly points out that injunctive relief is not available to private litigants under the FDCPA. *See, e.g., Zanni v. Lippold,* 119 F.R.D. 32, 34 (N.D.Ill.1988) (noting that the legislative history and statu-

---

8. The FDCPA also provides for, and Gammon has requested, the award of costs and reasonable attorney's fees. 15 U.S.C. § 1692k(a)(3).

tory language indicate that Congress did not intend the FDCPA to provide injunctive relief to private litigants); *Strong v. National Credit Management Co.,* 600 F.Supp. 46, 47 (E.D.Ark.1984) (concluding that no private right to seek injunctive relief should be implied under the FDCPA); *Sibley v. Fulton DeKalb Collection Serv.,* 677 F.2d 830, 834 (stating that equitable relief is not available to an individual under the FDCPA); *Duran v. Credit Bureau of Yuma,* 93 F.R.D. 607, 608 (D.Ariz.1982) (noting that courts are without jurisdiction to grant injunctive relief under the FDCPA). Gammon states in his reply that he "does not agree" with the above decisions, but provides no support for his position that the FDCPA allows for injunctive relief. His point is not well taken. Accordingly, this Court agrees with the conclusion in the above cases that injunctive relief is not available to Gammon under the FDCPA. Gammon is therefore left with his claims for declaratory relief and statutory damages.

■ GC Services does not dispute that declaratory judgment is available to the class. In addition, this Court views declaratory judgment as appropriate in this case. As stated in Professor Borchard's classic treatise, "[t]he two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." E. BORCHARD, DECLARATORY JUDGMENTS 299 (2d ed. 1941). In the instant case, a declaratory judgment would settle the issue of the legality of GC's behavior with respect to the entire class. Given that the very purpose of class actions is to promote judicial efficiency and economy, *see General Tel. Co. v. Falcon,* 457 U.S. 147, 159, 102 S.Ct. 2364, 2371, 72 L.Ed.2d 740 (1982); *Vuyanich v. Republic Nat'l Bank of Dallas,* 723 F.2d 1195, 1199, 1200–01 (5th Cir.), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 507 (1984), this Court finds Gammon's request for declaratory judgment to be appropriate.

■ Although GC Services does not dispute the availability of declaratory judgment in this case, it questions the propriety of granting class certification for declaratory judgment on the basis that Gammon could just as easily litigate his claim individually, and, should he prevail, GC Services would be collaterally estopped in subsequent cases from raising the claim that its conduct was not wrongful. Class certification, GC Services asserts, therefore serves no purpose in this case. It is well-settled in the Seventh Circuit, however, that a motion for class certification will not be denied merely because certification is not necessary. *Vergara v. Hampton,* 581 F.2d 1281 (7th Cir.1978) (citing *Fujishima v. Board of Educ.,* 460 F.2d 1355, 1360 (7th Cir.1972); *Vickers v. Trainor,* 546 F.2d 739, 747 (7th Cir.1976)) ("The rule in this circuit is that class certification may not be denied on the ground of lack of 'need' if the prerequisites of Rule 23 are met."), *cert. denied,* 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373 (1979). Additionally, a class action is an appropriate mechanism for the resolution of these issues. *See Avila v. Van Ru Credit Corp.,* 1995 WL 41425 at *7 (N.D.Ill. Jan. 31, 1995) ("The class action will only resolve the liability [of the defendant] and the amount of statutory damages that should be awarded if an FDCPA violation is found. Actual damages will not be at issue. A class action is the superior method to resolve the issues that [the plaintiff] raises.").

■ Because Gammon requests class certification for both declaratory judgment and monetary relief, this Court must determine whether the non-monetary relief predominates in order to certify under Rule 23(b)(2). *See* RULES ADVISORY COMM. NOTES TO 1966 AMENDS. TO RULE 23, 39 F.R.D. 69, 103 (1966). Most courts allow damages to be adjudicated in a Rule 23(b)(2) action where the monetary damages are secondary or ancillary to the injunctive relief sought. *See, e.g., Doe v. Guardian Life Ins. Co.,* 145 F.R.D. 466, 477 (N.D.Ill.1992); *Williams v. Lane,* 129 F.R.D. 636, 639 (N.D.Ill.1990); *Lawson v. Metropolitan Sanitary Dist. of Greater Chicago,* 102 F.R.D. 783, 793 (N.D.Ill.1983); *Edmondson v. Simon,* 86 F.R.D. 375, 383 (N.D.Ill.1980). One court notes, however, that

the cases in which this has been permitted appear to be cases in which the award of damages flows automatically from the grant of injunctive or declaratory relief, and in which the damages are subject to ready calculation on the basis of a formula or principles uniformly applicable to the class.

*Rice v. City of Philadelphia*, 66 F.R.D. 17, 20 (E.D.Pa.1974) (citing *Rodriguez v. Swank*, 318 F.Supp. 289 (N.D.Ill.1970), *aff'd*, 403 U.S. 901, 91 S.Ct. 2202 (1971)) (citations omitted); *see also Fischer v. Dallas Fed. Sav. & Loan Ass'n*, 106 F.R.D. 465, 470 (1985), *aff'd*, 835 F.2d 567 (5th Cir.1988).

Because Gammon has not requested that we consider bifurcating certification for the purposes of determining liability and damages, his motion for class certification stands or falls with our determination of whether the request for declaratory judgment predominates over the request for statutory damages, thus rendering the entire claim appropriate for certification under Rule 23(b)(2). On the one hand, Gammon has requested a declaratory judgment that GC Services' letter, mailed to every proposed class member, violates the FDCPA. Declaratory judgment is clearly sought as an integral part of the relief for the entire class. *See Patrykus v. Gomilla*, 121 F.R.D. 357, 363 (N.D.Ill.1988). If Gammon prevails on the issue of liability, statutory damages would flow directly from the declaratory judgment and are readily calculable on a classwide basis. Additionally, the requested maximum statutory damages, if awarded, would amount to approximately 13 cents per class member. Pl.'s Mot. Class Cert. at 6. Indeed, Gammon has proposed that cy pres distribution would be appropriate in this case, and thus class members would actually receive no part of a monetary award.[9] In light of the de minimus amount of statutory damages that each class member would potentially receive, the fact that the damages flow from the declaratory judgment, and the readiness with which the statutory damages can be calculated, we conclude that the request for non-monetary relief predominates over the request for damages.

 GC Services expresses a purported concern that, should this Court certify the class, each class member would forego up to $1,000 in statutory damages available to individual litigants under the FDCPA. As stated above, Rule 23(b)(2) is a no-notice, non opt-out provision. We thus note with some concern that the proposed class members, who could potentially recover significantly greater statutory damages in individual actions, will receive no notice or opportunity to opt out of the class.[10] The FDCPA, however, explicitly contemplates class actions for statutory damages, "without regard to a minimum individual recovery." 15 U.S.C. § 1692k(a)(2)(B). Even absent such a provision, the fact that class members would receive only minimal damages does not necessarily suffice to render an action inappropriate for class certification. Class actions were designed "not only to compensate victimized members of groups who are similarly situated ... but also to deter violations of the law, especially when small individual claims are involved. Disgorgement of illegal gains from wrongdoers, together with ... application of the recovery for the benefit of class members under cy pres doctrines, would fulfill the deterrence objectives of class actions." H. NEWBERG, CLASS ACTIONS § 4.36; *cf. Chevalier v. Baird Savs. Ass'n*, 72 F.R.D. 140, 156 (noting that the minimum damage provision

---

9. Gammon suggests that cy pres distribution of any damage award to the class would be appropriate should he prevail on the merits. GC Services has not disputed the appropriateness of this remedy. Therefore, we decline to address this issue at this stage of the litigation, but merely assume for purposes of this opinion that cy pres distribution of any damage award would provide a suitable remedy should Gammon prevail.

10. As noted earlier, Gammon has not sought actual damages on behalf of himself or the proposed class. Long-standing principles of civil procedure demand that the issues of liability and damages be resolved in one litigation, and thus due process may require some form of notice to class members that the class action is pending and that claims for actual damages may be adjudicated as part of it. We find it appropriate, however, to wait until a later stage of the litigation to address issues of notice. Therefore, neither party is foreclosed from arguing as to the proper nature and scope of notice to class members of the opportunity to present claims for actual damages, if any, in this proceeding.

in the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, did not merely concern consumers' motivation to sue, but also acted as a deterrent to creditors). We see no reason to decline to certify the class in the instant case merely because of the defendant's mere speculation that some class members might prefer to bring individual actions for statutory damages. The Court is mindful of the practical reality that few individuals will pursue the filing of a federal lawsuit, with its attendant costs, when their statutory damage recovery is capped at $1,000. Class certification is not barred simply because some class members may recover lesser statutory damages than they would have had they brought their claims individually.

## CONCLUSION

Gammon's motion for class certification is granted. Pursuant to Federal Rule of Civil Procedure 23(b)(2), this Court will certify a class consisting of all persons from whom GC Services has attempted to collect debts since August 31, 1992.