**In re RISK MANAGEMENT ALTERNATIVES, INC., FAIR DEBT COLLECTION PRACTICES ACT LITIGATION.**

No. 01 Civ. 4441(CM).

United States District Court, S.D. New York.

June 14, 2002.

Robert I. Lax, New York City, for consolidated plaintiffs.

Lisa Martinez Wolmart, Pitney, Hardin, Kipp & Szuch, LLP, Morristown, NJ, for defendants.

## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS, GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiff brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, *et seq.* ("FDCPA"), alleging that defendant's attempts at debt collection violated sections 1692g(a)(3) and e(8) of the FDCPA. Plaintiff moves for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Plaintiff also moves for class certification pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3) or 23(b)(2). Defendant has filed a cross-motion, moving for summary judgment pursuant to Fed.R.Civ.P. 56. As explained below, plaintiff's motion for summary judgment is denied, plaintiff's motion for class certification is granted, and defendant's motion for summary judgment is granted in part and denied in part.

### FACTS PERTINENT TO THE MOTION

The following facts are undisputed for the purposes of the pending motions. For purposes of the FDCPA, plaintiff Schaake is a "consumer" as defined in § 1692a(3), and defendant Risk Management Alternatives, Inc. ("RMA") is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

On or about April 9, 2001, RMA mailed a form debt collection letter to plaintiff demanding payment of a debt allegedly owed to Capital One. Complaint at ¶ 4. The letter stated the following:

**Creditor: Capital One**

**Balance Due: $3594.08**

The above account has not been paid and has now been placed with this company for collection procedures. Please remit the full balance to Risk Management Alternatives, Inc.

Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, we will assume that it is valid. If you do dispute it—by notifying us in writing to that effect—we will, as required by law, obtain and mail to you proof of the debt. And, if within the same period, you request in writing the name and address of the original creditor to whom the debt was owed, we will provide you with that information too.

The law does not require us to wait until the end of the 30–day period before taking action to collect the debt. If, however, you request proof of the debt or the name of the original creditor within the 30–day period that begins with your receipt of this letter, the law requires us to suspend our efforts to collect the debt until we mail the requested information to you.

It is our practice to report debts with principal balances of $50.00 or more to Equifax Credit Information Services to be posted in your credit file as a past due account. However, if we receive payment in full, or you submit a written dispute and/or request pursuant to the above paragraph, we will not report this debt for posting in your credit file.

To discuss this account call:

M. Collins 1–800–477–1827

This communication is from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.

Plaintiff alleges that the above letter "violated, overshadowed and contradicted" 15 U.S.C. § 1692g, particularly § 1692g(a)(3). Section 1692g provides as follows:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notified the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

If the consumer notified the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of the judgment, or the name and address of the original creditor and a copy of such verification or judgment, or name and address of the original

creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(a) and 1692g(b).

Plaintiff also alleges that the above letter violated 15 U.S.C. § 1692e(8). Section 1692e(8) provides as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(8) Communicating or threatening to communicate to any person credit information which is know or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e(8).

Plaintiff further alleges that during the alleged class period, commencing on or after May 23, 2000, RMA disseminated no fewer that 1,434,574 letters containing materially identical language. *See* Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories, ¶¶ 1–2.

Plaintiff Schaake originally filed her Complaint against RMA on May 24, 2001. Another plaintiff, Karen Kamkahachi, filed a virtually identical Complaint against RMA on September 26, 2001. Before RMA filed an Answer to Kamkahachi's Complaint, this Court issued a Consent Consolidation Order through which the two Complaints were consolidated and Schaake's action was deemed the "Master Action." RMA was not required to respond separately to the Kamkahachi Complaint, or to any tag-along action affected by the Order. By virtue of the Order of Consolidation, any decision made on plaintiff Schaake's motion is binding on the entire Master Action.

Plaintiff Schaake claims that the letter sent to her by RMA on April 9, 2001 violates §§ 1692g(a)(3) and 1692e(8). Plaintiff moves for summary judgment or a judgment on the pleadings with regard to defendant's liability for violations of the FDCPA. Plaintiff also seeks class certification pursuant to Rule 23(a) and 23(b)(3), on behalf of a Plaintiff Class defined as "all persons to whom Defendant and its agents sent initial communica-

tions in the form of the April 9, 2001 letter mailed to plaintiff Gerda Schaake, or otherwise containing the identical subject language, in an attempt to collect a consumer debt, as reflected by Defendant's records, on or after May 23, 2000." Plaintiff's Notice of Motion for Judgment on the Pleadings and Class Certification, at 1–2. Excluded from this Class is the Defendant, its officers, directors, partners, associates, employees of the Defendant, subsidiaries, parents and affiliates of the Defendant, as well as the immediate families of any excluded individual.

Defendant cross-moves for summary judgment, and claims that RMA's April 9, 2001 letter to plaintiff demonstrates that the letter more than adequately conveyed each of the plaintiff's statutory rights, and was in full compliance with 15 U.S.C. § 1692g(a)(3). RMA also argues that the plain language of the letter demonstrates that no threat in violation of § 1692e(8) is contained therein because the letter merely provided plaintiff with the information that the debt would not be reported *at all* if a written dispute was submitted, in compliance with the provisions of 15 U.S.C. § 1692g(b). Defendants contend that the language contained in RMA's correspondence not only complied with Sections 1692g and 1692e(8), but, in fact, supplied plaintiff with greater disclosure than that to which she was entitled. Defendants also opposes plaintiff's motion for class certification, arguing that, even if the Court denied RMA's motion for summary judgment, plaintiff fails to meet her burden of proving that class certification is appropriate in this case.

For the reasons stated below, defendant's motion for summary judgment is granted in part and denied in part, plaintiff's motion for judgment on the pleadings is denied and plaintiff's motion for class certification is granted.

## DISCUSSION

### I. *Standard of Review*

Plaintiff moves for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56(c).

■ Rule 12(c) provides that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." On a motion for judgment on the pleadings, all matters plead in the complaint that are not in dispute must be accepted as true, and the Court may reach a judgment on the merits by reviewing the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988); *Hotel St. George Assoc. v. Morgenstern*, 819 F.Supp. 310 (S.D.N.Y.1993).

■ Rule 12(c) permits the Court to convert a motion for judgment on the pleadings to a motion for summary judgment if the Court deems it necessary to refer to matters outside of the pleadings. *See Frerks by Frerks v. Shalala*, 848 F.Supp. 340 (E.D.N.Y.1994), *affirmed*, 60 F.3d 1234 (7th Cir.1995) (upon motion for judgment on the pleadings, the court in its discretion may treat the motion as one for summary judgment). In its Reply papers, plaintiff submitted portions of the deposition testimony of Gerda Schaake and defendant's responses and objections to plaintiff's interrogatories and to plaintiff's first request for the production of documents. I find it necessary to refer to these documents, so plaintiff's motion for a judgment of the pleadings is hereby converted to a motion for summary judgment pursuant to Rule 56(c). Plaintiff does not object to this conversion.

■ Under Federal Rule of Civil Procedure 56(c), the court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, where a plaintiff cannot establish an essential element of his claim, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–33, 106 S.Ct. 2548. On a motion for summary judgment, the court views the record in the light most favorable to the nonmovants and resolves all ambiguities and draws all reasonable inferences against the movants. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82. S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Commn'rs*, 834 F.2d 54, 57 (2d Cir.1987).

## II. FDCPA Standard

■ According to the Second Circuit, when determining whether a violation of § 1692g exists, courts should apply an objective standard, measured by how the "least sophisticated consumer" would interpret the notice received from the debt collector. *See Russell v. Equifax A.R.S. and CBI Collections*, 74 F.3d 30, 34 (2d Cir.1996). Congress intended the FDCPA to protect consumers in general from abusive debt collection practices. *See id.;* S.Rep. No. 95–382 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695. The test thus centers on "how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." *Equifax*, 74 F.3d at 34.

■ The "least sophisticated-consumer standard best effectuates the Act's purpose of limiting the 'suffering and anguish' often inflicted by independent debt collectors." *Russell*, 74 F.3d at 34. "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all customers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir.1993). The Second Circuit has been particularly adamant in its application of the least sophisticated consumer standard to 15 U.S.C. § 1692g, the section of the FDCPA plaintiff alleges was violated by defendant. *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir.2001); *Russell*, 74 F.3d at 34. The FDCPA established a strict liability standard; a consumer need not show an intentional violation of the Act by a debt collector to be entitled to damages. *Russell*, 74 F.3d at 33. Additionally, a single violation of the Act can subject a debt collector to civil liability under the Act. *See* 15 U.S.C. § 1692k.

### III. *Motions for Summary Judgment*

#### A. *15 U.S.C. § 1692g*

Plaintiff alleges that the language contained in RMA's debt collection letter "overshadows" the rights set forth in § 1692g, particularly in § 1692g(a)(3), which provides that the debt collection notice must include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the *debt collector*." Plaintiff argues that the "least sophisticated consumer" would believe, after reading RMA's correspondence, that the only way to dispute the validity of a debt is "in writing," whereas § 1692g(a)(3) permits a consumer to dispute a debt in any manner which serves to inform the collector of a dispute.

Defendant argues that plaintiff's claim fails because RMA's letter was in compliance with the statutory obligations set forth in § 1692g, and that even the "least sophisticated consumer" would not believe that the only way to dispute his debt was in writing. Defendant also argues that, despite the fact that RMA complied with its statutory obligations under plaintiff's interpretation of § 1692g, this Court should adopt the reasoning of the Third Circuit in *Graziano v. Harrison*, 950 F.2d 107 (3d Cir.1991), where the Court held that all disputes pursuant to § 1692g have to be in writing.

If *Graziano* controlled, defendant's should be entitled to summary judgment. Unfortunately, the Second Circuit has not definitively resolved this issue, and *Graziano's* reasoning (while seductive) contravenes the reasoning of several district court decisions of this Circuit. *See Castro v. A.R.S National Services, Inc.*, 99 Civ. 4596, 2000 WL 264310 (S.D.N.Y. Mar.8, 2000); *Ong v. American Collections Enterprise*, 98 Civ. 5117, 1999 WL 51816 (E.D.N.Y. Jan.15, 1999); *Young v. Credit Bureau of Lockport, Inc.*, 1989 WL 79054, *amended on other grounds*, 729 F.Supp. 1421 (W.D.N.Y.1989). My task is to guess which way the Second Circuit would come down.

 Section 1692g provides that "when an independent debt collector solicits payment it must provide the consumer with a detailed validation notice. The notice must include the amount of the debt, the name of the creditor, a statement that the debt's validity will be assumed unless disputed by the consumer within 30 days and an offer to verify the debt and provide the name and address of the original creditor, if the consumer so requests." *Equifax*, 74 F.3d at 34 (2d Cir.1996); *see* 15 U.S.C. § 1692g(a). The Second Circuit recently held that:

> A debt collector violates the Act if it fails to convey the information required by the Act. Even if a debt collector conveys the required information, the collector nevertheless violates the Act if it conveys that information in a confusing or contradictory fashion so as to cloud the requires message with uncertainty. Thus, a debt collector violates the Act if its communication is "reasonably susceptible to an inaccurate reading' of the required message."

*DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir.2001) (*citing Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir.1996)). "A notice is overshadowing or contradictory [and thus violative of the Act] if it would make the least sophisticated consumer uncertain as to her rights." *Castro*, 2000 WL 264310, at *2 (quoting *Russell*, 74 F.3d at 35). A collection notice may be found deceptive if the notice "can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.*

 My concern here is whether the language employed in RMA's letter *could* cause the least sophisticated consumer to become confused or uncertain as to her rights under § 1692g(a)(3). I realize that RMA did state—almost exactly—what the Act instructs it to state. Such language would not confuse a sophisticated consumer; it would not even confuse a moderately sophisticated consumer. But the effect the letters would have on those consumers is not important. I must focus only on the impression the letter would have on the *least* sophisticated consumer.

Plaintiff contends that when the letter is

read in its entirety [1], the "least sophisticated consumer" could believe that the debt collector would not assume a debt is valid only if the consumer submitted a written dispute, and that any other communication of a dispute by telephone or in person would be insufficient to counter the presumption of a valid debt. Plaintiff argues that this implied writing requirement would prevent many consumers from ever disputing their debts.

The very first line of the second paragraph of RMA's letter states clearly that "Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, we will assume that it is valid." There is no mention of a writing requirement in these two sentences. The following sentences do however contain a writing requirement, and it is this juxtaposition of sentences without a clear distinction between the different options that makes this letter possibly violative of the FDCPA.

Section 1692g of the FDCPA itself is confusing. "Of the three provisions of section 1692g(a) dealing with dispute of the debt, two explicitly require that the debt be disputed in writing. An unsophisticated debtor reading the statute or a paraphrase thereof could easily misconstrue it and conclude that all these provisions require him or her to dispute the debt in writing." *Higgins v. Capitol Credit Services, Inc.,* 762 F.Supp. 1128, 1134–35 (D.Del.1991). Indeed, that is precisely what the Third Circuit recently held in *Graziano.*

I conclude, along with my colleagues cited earlier, that the Second Circuit would not accept the *Graziano* rule, and would permit disputes to be raised otherwise than in writing. This means that a collection letter must be crafted in such a way that the least sophisticated consumer would understand that

(1) she could raise a dispute in many ways, but (2) she could get verification of the debt and the name and address of the original creditor only if she disputed it in writing. This is a silly result and one hopes that it is not what Congress had in mind. Legislative clarification of this discrepancy would be helpful.

After reading RMA's letter, I conclude that a jury must decide whether the least sophisticated consumer could believe that any challenge to his debt had to be in writing. The least sophisticated consumer confused by defendant's letter might choose not to notify the debt collector that she disputes a debt's validity because she cannot or will not dispute the debt in writing. "The defendant's letter could therefore hamper a consumer's efforts to communicate the fact that she disputes a debt, thereby depriving her of the statutory protection afforded consumers who notify a collector that the validity of a debt is contested." *See Castro,* 2000 WL 264310, at *3.

On the other hand, RMA's letter is not so clearly in violation of the FDCPA that I can decide as a matter of law that the letter overshadows or contradicts § 1692g such that the least sophisticated consumer could believe that the only possible way to contest a debt is in writing. For instance, the first sentence of the letter makes no mention of a written dispute, and the letter does provide a "1–800" telephone number and invites the consumer to call to "discuss this account." Whether the juxtaposition of the first two sentences and the second two sentences would create confusion in the least sophisticated consumer's mind is a question that must go to a jury.

In a similar situation, a district court in this district decided that whether or not a

---

1. Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, we will assume that it is valid. If you do dispute it—by notifying us in writing to that effect—we will, as required by law, obtain and mail to you proof of the debt. And, if within the same period, you request in writing the name and address of the original creditor to whom the debt was owed, we will provide you with that information too.

The law does not require us to wait until the end of the 30–day period before taking action to collect the debt. If, however, you request proof of the debt or the name of the original creditor within the 30–day period that begins with your receipt of this letter, the law requires us to suspend our efforts to collect the debt until we mail the requested information to you.

debt collection letter similar to the one sent by RMA violated § 1692g(a)(3) was a question of fact for a jury. In *Goldberg v. Winston & Morrone, P.C.*, 1997 WL 139526 (S.D.N.Y. Mar.26, 1997), defendant tracked the statute's language but reversed the order of Sections 3 and 4. The letter stated:

> If you dispute the validity of this debt or any portion of it, in writing to our office at the above address within thirty (30) days after receipt of this letter, we will mail verification of the debt to you. If you do not dispute the validity of this debt or any portion of it within thirty days, we will assume it is valid. This is an attempt to collect a debt, and any information obtained will be used for that purpose.

*Goldberg*, 1997 WL 139526 at *6. My colleague Judge Kaplan stated, "Plaintiff contends that, as a matter of law, this language would mislead the 'least sophisticated consumer' into believing that the writing requirement of Section 4 [of § 1692g(a)] applies also to Section 3. Whether confusion would result from this rearrangement is an issue of fact properly reserved for the finder of fact at trial." *Id.* So to here. Both plaintiff's and defendant's motions for summary judgment are denied.

### B. *15 U.S.C. § 1692e(8)*

■ Plaintiff also alleges that RMA's debt collection letter violated 15 U.S.C. § 1692e(8). Section 1692e(8) prohibits a debt collector from "communicating or threatening to communicate to any person credit information which is known or should be known to be false, including the failure to communicate that a disputed debt is disputed." *Id.* Defendant argues that plaintiff's claim must fail as a matter of law because RMA never reported or threatened to report an orally disputed debt to a credit reporting agency as undisputed. Here, I agree with defendant.

Nowhere in RMA's letter does defendant threaten to report orally disputed debts as undisputed. The letter does state that it will not report debts that have been disputed in writing to a credit reporting agency at all, but does not say or imply that it will report all debts disputed in other ways as undisput-

ed. Furthermore, plaintiff never disputed the validity of her debt in any way, so RMA could not have communicated a disputed debt as undisputed—the debt was always undisputed. *See Brady v. The Credit Recovery Company, Inc.*, 160 F.3d 64 (1st Cir.1998).

Plaintiff's claim pursuant to § 1692e(8) fails as a matter of law, and defendant's motion for summary judgment on this issue is granted. Plaintiff's motion for summary judgment is denied.

### C. *Injunctive and Declaratory Relief*

■ In her request for relief, plaintiff seeks injunctive relief "restraining defendant ... [from] engaging in conduct and practices that are in violation of the FDCPA" and a declaratory Order requiring defendant to take "corrective disclosures." Complaint at 8. Defendant argues that plaintiff's claim for injunctive and declaratory relief should be dismisses as a matter of law because violations of the FDCPA cannot serve as the basis for such relief for private plaintiffs. I agree, and grant defendant's motion for summary judgment on this issue.

In *Goldberg*, plaintiff sought declaratory or injunctive relief in her case alleging FDCPA violations. The court stated as clearly as possible that "violations of the FDCPA cannot serve as the basis for injunctive relief for private plaintiffs." *Goldberg*, 1997 WL 139526, at *3 (citing *Gammon v. GC Services L.P.*, 162 F.R.D. 313, 319–20 (N.D.Ill.1995)). Furthermore, the court stated "Nor, in view of the limitations of the FDCPA, could a declaratory judgment here serve as a basis for injunctive relief." *Id. See also Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 399 (E.D.N.Y.1998) (FDCPA does not provide for injunctive relief); *Berrios v. Sprint Corp.*, 1998 WL 199842, n. 4 (E.D.N.Y. Mar.16, 1998).

### IV. *Class Certification*

■ Rule 23(a) of the Federal Rules of Civil Procedure establishes four prerequisites to class certification. A plaintiff may sue on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are numerous questions of law or fact common to the class; (3)

the claims of the plaintiff are typical of those of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

Additionally, a class action may be maintained only if it qualifies under at least one of the categories provided in Rule 23(b). Relevant to this action is Rule 23(b)(3). Rule 23(b)(3) permits class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

■ In determining the propriety of a class action, the question is not whether "the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 133 (2d Cir. 2001) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (internal citations omitted)).

A. *The requirements of Fed.R.Civ.P. 23(a) have been met*

1. *Numerosity—Rule 23(a)(1)*

■ For a class action to be appropriate, the proposed class must be so numerous that joinder of all members is "impracticable." Fed.R.Civ.P. 23(a)(1); *see also Gerber v. Computer Assoc. Int'l, Inc.*, [1995 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,772, at 92,398–99, 1995 WL 228388 (E.D.N.Y.1995). The impracticability requirement does not mean that joinder must be impossible, but simply that the Court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable. *Farley v. Baird, Patrick & Co.*, [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,050, at 94,627, 1992 WL 321632 (S.D.N.Y.1992).

■ During discovery, defendant indicated that no fewer than 1,434,574 letters containing identical or similar language as in plaintiff's letter were mailed by RMA since October 1, 2000. Defendant's Specific Responses and Objections to Plaintiff's First Set of Interrogatories, ¶¶ 1–2. Common sense dictates that joinder of all members of the Class herein would be impracticable. *See Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 55 (S.D.N.Y.1993) ("The court may make 'common sense assumptions' to support a finding of numerosity."). The numerosity requirement is satisfied in this case. *See, e.g., Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.), *cert. denied*, 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995) (recognizing that numerosity is presumed at a level of forty members).

2. *Predominant common questions of law or fact—Rule 23(a)(2) and 23(b)(2)*

■ Rule 23(a)(2) and (b)(3) require that in order for an action to be properly maintained as a class action, questions of law or fact common to the class must predominate over questions peculiar to individual members of the class. *Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124. In order to satisfy Rules 23(a)(2) and (b)(3), there does not have to be an absolute identity of facts: "If common questions of fact predominate over individual questions, the requirement of commonality is satisfied." *Gerber*, Fed.Sec. L.Rep. (CCH) ¶ 98,722 at 92,399 (quoting *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87 (S.D.N.Y.1981)). As I have stated previously, "Like other courts in this Circuit which have considered the applicability of the class action to lawsuits brought under the FDCPA, I have no trouble concluding that the commonality ... requirement[ ][is] met." *Wilner v. OSI Collection Services, Inc.*, 201 F.R.D. 321 (S.D.N.Y.2001). In certifying cases brought pursuant to the FDCPA, it has been noted that:

> The questions of law and fact involved in this action relate to the use of the debt collection letters admittedly mailed by the defendant to the proposed class. These common questions of law and fact surrounding the contents and mailing of these letters predominate over individual issues. Accordingly, the Court finds that the plaintiff has satisfied this prong of Fed.R.Civ.P. 23(b)(3).

*Passeggio v. Cosmetique, Inc.*, 1999 U.S.Dist. LEXIS 7607 (E.D.N.Y.1999) (citing *Labbate–D'Alauro v. GC Service Limited Partnership*, 168 F.R.D. 451 (E.D.N.Y.1996)); *see also Harrison v. Great Springwaters*, 1997 WL 469996 (E.D.N.Y. June 18, 1997); *Macarz v. Transworld Sys.*, 201 F.R.D. 54 (D.Conn.2001); *Gammon v. GC Services L.P.*, 162 F.R.D. 313, 317 n. 4 (N.D.Ill.1995).

 The commonality requirement is clearly satisfied here—the claims of all potential Class members are based upon the same allegedly violative language contained in the disseminated collection letters. Where numerous persons have claims that are based on common factual and legal issues, judicial economy and the fair and consistent resolution of such claims are best served by the adjudication of all such claims in one proceeding. *Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124.

### 3. *Typicality—Rule 23(a)(3)*

 Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of the Class members. The requirement of typicality, a matter closely related to commonality, is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir.1997) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992)). The requirement ensures that "maintenance of a class action is economical and [that] the named plaintiff's claims and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Id.* (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

 The losses allegedly suffered by the named plaintiff and the other members of the Class all allegedly arise from the dissemination of identical language contained in debt collection letters which each received. In addition, plaintiff's claims are premised on the same legal theories as are the claims of other proposed class members. Accordingly, plaintiff's claims are typical of those in the proposed Class.

### 4. *Plaintiff Will Fairly and Adequately Protect the Interests of the Class*

 Under Rule 23(a)(4), adequacy of representation is measured by two factors: (1) the plaintiff's attorneys must be qualified, experienced and generally able to conduct the litigation; and (2) the plaintiff must not have interests antagonistic to those of the proposed Class. *See, e.g., Drexel*, 960 F.2d at 291; *Gerber*, Fed.Sec.L.Rep. (CCH) ¶ 98,-722 at 92,399; *Genden v. Merrill Lynch*, 114 F.R.D. 48, 53 (S.D.N.Y.1987). These factors are satisfied here.

The first prong of the analysis is met by plaintiff. Plaintiff's counsel, from the firm of Robert I. Lax & Associates, submitted a firm resume demonstrating that all counsel are sufficiently experienced in consumer class action litigation. This factor supports the plaintiff's position that counsel will adequately represent the interests of the Class. *See Labbate–D'Alauro*, 168 F.R.D. at 457 (citing *Avila v. Van Ru Credit Corp.*, 1995 WL 41425 (N.D.Ill. Jan.31, 1995)).

RMI challenges the plaintiff's application with regard to the second prong. According to RMI, Gerda Schaake has no understanding of the relative merits of pursuing this case as a class action versus an individual action. Plaintiff argues that she does have an understanding of the merits of a class action, and irregardless, she has no interests antagonistic to those of the proposed Class.

In actions such as this FDCPA action, named plaintiffs are not required to "have expert knowledge of all the details of the case, . . . and a great deal of reliance on the expertise of counsel is to be expected." *See Passeggio*, 1999 U.S.Dist. LEXIS at *36 (quoting *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1407, 1416 (E.D.N.Y.1989), *aff'd*, 907 F.2d 1295 (2d Cir. 1990)).

Plaintiff's deposition testimony reveals that she has a sufficient, if not completely accurate, understanding of the damages recoverable in individual and class action FDCPA actions. In fact, it may be RMA that has

improperly interpreted the damages provision of the FDCPA. In her deposition, Ms. Schaake indicated that it was her belief that she stood to recover up to $1,000 regardless of whether the case was maintained as an individual or a class action. Schaake Dep. at 39–42. RMA claims that Ms. Schaake "has no understanding of the relative merits of pursuing this case as a class action (in which plaintiff stands to recover a mere $.30 based upon the size of the class that plaintiff seeks to certify, and based upon the $500,000 statutory cap), versus an individual action (in which plaintiff could have recovered as much as $1,000)." Def. Memorandum of Law at 20. However, the damages provision in question provides:

(a) Amount of damages. Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of . . .

 (2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

 (B) in the case of a class action. (i) *such amount for each named plaintiff as could be recovered under subparagraph (a)*, and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; . . .

15 U.S.C. § 1692k (emphasis added). As such, Ms. Schaake is correct in her understanding that as a named plaintiff, she would still be entitled to her full measure of individual damages "as could be recovered under subparagraph (A)." Ms. Schaake was a bit unsure of how the maximum amount of $500,000 would be distributed to class members, but that is not really a prerequisite to her adequate representation of the class.

In relation to plaintiff's knowledge of her lawsuit, class certification should be defeated only when a purported lack of knowledge directly effects the successful prosecution of the lawsuit and the protection of the interests of the Class. *See Jane B. v. New York City Dept. of Social Services,* 117 F.R.D. 64, 71 (S.D.N.Y.1987). Ms. Schaake is not a lawyer, and is not expected to have a full legal comprehension of all her claims in this action. *Id.* In fact, the FDCPA itself is designed to protect the least educated consumer whom is most often targeted for abusive conduct. *See Aguirre v. Bustos,* 89 F.R.D. 645 (D.N.M.1981). Ms. Schaake has indicated that she understands that allegations in the Complaint and that she reviewed the Complaint prior to its filing. Schaake Dep. at 14–16 and 33. She understands her fiduciary duties as a class representative and the need to observe the best interests of those she represents. *Id.* at 33–34, 57–58. As such, Ms. Schaake has demonstrated that she is willing and able to adequately represent the purported Class.

### B. *The requirements of Rule 23(b)(3) have been met*

In addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one of the three conditions of subdivision (b) of Rule 23. Rule 23(b)(3) permits class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Factors relevant to the superiority of a class action under Rule 23(b)(3) include:

(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

As discussed above, there are many common issues of law and fact in this case.

There can be no serious dispute that these liability issues are common to all members of the proposed Class and clearly predominate. Once the common question of liability is resolved, all that will remain is the determination of damages suffered by each Class member. *See Visa Check*, 280 F.3d 124.

Not only do common questions of law and fact predominate in the present litigation, but also, as further required by Rule 23(b)(3), "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3). Suits brought under the FDCPA such as this case regularly satisfy the superiority requirement of Rule 23. *See Labbate–D'Alauro*, 168 F.R.D. 451 (FDCPA cases regarding the liability of standardized documents and practices often result in the predomination of common questions of law or fact and were generally appropriate for resolution by class action); *Irwin v. Mascott*, 186 F.R.D. 567 (N.D.Cal.1999); *Harrison v. Great Spring-waters*, 1997 WL 469996 (E.D.N.Y.1997).

The Class, as defined, will protect the interests of all persons to whom Defendants sent letters in violation of the FDCPA during the Class Period and who incurred statutory damages as a result, without swamping the judicial system with numerous identical claims. I will grant plaintiff's motion for class certification for the class as defined in her Notice of Motion for Class Certification: "[A]ll persons to whom Defendant and its agents sent initial communications in the form of the April 9, 2001 letter mailed to plaintiff Gerda Schaake, or otherwise containing the identical subject language, in an attempt to collect a consumer debt, as reflected by Defendant's records, on or after May 23, 2000."

Defendant contends that RMA cannot be held liable to any putative class members who received the letters in question prior to October 1, 2000 because any notices sent prior to that date were sent by Equifax Risk Management Services ("ERMS"). RMA states that it purchased certain of the assets of ERMS on October 1, 2000, and that, under the terms of the agreement governing RMA's purchase, the parties specifically agreed that the assets excluded from the purchase price were all rights and claims against or involving Equifax, any of its Affiliates, or any officer, director or shareholder of Equifax. Plachta Aff. ¶ 7–8. I will not limit the certified class at this time. First of all, RMA has not provided a copy of this agreement, and the Court is not in the habit of making a contractual ruling without evidence of the contract before it. Secondly, plaintiff has not even addressed this point in its Reply. The issue of whether RMA is liable for letters sent before October 1, 2000 is undecided, as is whether RMA is liable for statutory damages to the Class at all. All of these issues will be litigated at trial, and the definition of the class may be limited accordingly after a trial on the merits.

### CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is denied, plaintiff's motion for class certification is granted, and defendant's motion for summary judgment is granted in part and denied in part.

This constitutes the decision and order of the court.